UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EDWARD A. SIMON, RANDY E. SIMON, and
OJOCHAL HOLDINGS, INC., *f/k/a Edward
Graphic Supplies, LTD*,

                              Plaintiffs,

v.                                               **DECISION AND ORDER**
                                                  07-CV-766S

ANTHONY J. FOLEY, LAURA FOLEY,
CONVERTING SOLUTIONS, INC., and
TRI-X, INC.,

                              Defendants.

## I. INTRODUCTION

In this cross-border commercial dispute, Plaintiffs have moved for an *Ex Parte* Temporary Restraining Order and an Order to Show Cause. They seek an Order temporarily enjoining Defendants from destroying or secreting evidence, and from fraudulently transferring corporate assets. Plaintiffs request additional relief by way of an Order to Show Cause, including pre-Answer discovery and payment of attorneys' fees. Defendants have not yet been served with the Complaint, which includes claims for breach of a trust agreement, breach of contract, and fraud, and have no notice of the motion at bar. For the reasons stated below, Plaintiffs' motion is denied.[1]

---

[1] In support of their motion, which was filed together with the Complaint on November 14, 2007, Plaintiffs filed the Affidavit of Edward A. Simon, the Affirmation of William R. Falcone, Esq., and a Memorandum of Law.

## II.  FACTS

**A.    The Parties**

The individual litigants in this case are all related.  Plaintiff Edward A. Simon is the father of Plaintiff Randy E. Simon and Defendant Laura Foley.  (Complaint, ¶¶ 1, 8; E. Simon Affidavit, ¶ 5.)  Laura Foley is married to Defendant Anthony J. Foley.  (Complaint, ¶¶ 4, 7; E. Simon Affidavit, ¶ 5.)

Edward and Randy Simon are citizens and residents of Ontario, Canada.  (Complaint, ¶ 1.)  They are the sole shareholders of Plaintiff Ojochal Holdings, Inc. f/k/a Edward Graphic Supplies, Ltd ("Edward Graphics").  (Complaint, ¶ 1; E. Simon Affidavit, ¶ 2.)  Edward Graphics is a Canadian corporation that manufactured and sold printing products.  (Complaint, ¶ 2.)

Anthony and Laura Foley are residents of Florida.  (Complaint, ¶ 7.)  They are the sole Directors and Officers of Defendant Converting Solutions, Inc. ("CSI"), a New York corporation formed by Edward Simon, Randy Simon, and Anthony Foley.  (Complaint, ¶¶ 7, 13, 16.)  Anthony Foley is the President of CSI and Laura Foley is the Secretary.  (Complaint, ¶ 17; E. Simon Affidavit, ¶ 5.)  The Foleys are also both salaried employees of CSI.  (Complaint, ¶¶ 19, 21; E. Simon Affidavit, ¶ 10.)

CSI was formed in July of 2004 to operate as the United States sales entity for Edward Graphics.  (Complaint, ¶¶ 4, 18; E. Simon Affidavit, ¶ 3.)  Anthony Foley is the record owner of all 100 issued shares of CSI, but he holds two-thirds of those shares in trust for Edward and Randy Simon (one-third for each) under the terms of a written trust agreement (appended to the Complaint as Exhibit A).  (Complaint, ¶¶ 6, 14, 15; E. Simon Affidavit, ¶ 4.)  As part of this suit, Edward and Randy Simon each claim equitable and

beneficial ownership of their one-third stake in CSI, and they seek removal of Anthony Foley as the trustee of the trust. (Complaint, ¶ 6.)

Lastly, Laura Foley is also the sole shareholder of Defendant TRI-X, Inc., a Florida corporation that does business throughout the United States. (Complaint, ¶¶ 9, 47.) Anthony Foley is an officer and employee of TRI-X. (Complaint, ¶ 10.)

**B.   The Business Relationship Between Edward Graphics and CSI**

CSI was Edward Graphics' sales agent in the United States. (Complaint, ¶¶ 4, 18; E. Simon Affidavit, ¶ 3.) The relationship was governed by a Management Services Agreement entered into on September 7, 2004 (appended to the Complaint as Exhibit B). (Complaint, ¶ 22.) When CSI sold a product in the United States, it notified Edward Graphics of the sale. (Complaint, ¶ 23; E. Simon Affidavit, ¶ 5.) Edward Graphics would then locate, sort, package, and ship the order directly to CSI's customer. (Complaint, ¶ 23; E. Simon Affidavit, ¶ 6.) Edward Graphics would also invoice the order, directing the customer to remit payment to CSI. (Complaint, ¶ 23; E. Simon Affidavit, ¶¶ 6, 7.)

CSI received all customer payments and deposited the funds into its Florida bank account. (Complaint, ¶ 23; E. Simon Affidavit, ¶ 7.) It then paid Edward Graphics for the products shipped, the shipping costs, and any additional costs associated with the order through an "inter-company account." (Complaint, ¶¶ 25, 26; E. Simon Affidavit, ¶ 8.) It appears that Edward Graphics did not have its own source of funding. (Complaint, ¶ 55; E. Simon Affidavit, ¶ 9.) Rather, it monitored CSI's financial and sales accounts via Internet access, and was dependent on blank checks pre-signed by Laura Foley and drawn on CSI's Florida bank account to pay its operating expenses. (Complaint, ¶¶ 23, 55; E. Simon Affidavit, ¶ 9.)

The two companies successfully carried on in this manner until sometime in 2005. (Complaint, ¶ 47.) At that time, the Simons were negotiating the sale of Edward Graphics so that Edward Simon could retire. (Complaint, ¶ 37.) The Simons were also attempting to sell their interests in CSI to the Foleys, but they could not reach an agreement. (Complaint, ¶ 38.)

On May 2, 2006, the Simons sold Edward Graphics to Jacobs and Thompson, Inc. (Complaint, ¶ 39.) Included in the sale was an accounts receivable due to Edwards Graphics from CSI for $279,619 CAD. (Complaint, ¶ 39.) It was expected that CSI would pay this receivable to Jacobs and Thompson after it collected various outstanding invoices from its customers. (Complaint, ¶ 45.) The sale agreement also included a consultant position for Randy Simon, and the continued use of CSI as Edward Graphics' United States sales arm. (Complaint, ¶¶ 40, 44.)

**C.    TRI-X, Inc.**

Meanwhile, on November 7, 2005, Anthony and Laura Foley formed TRI-X. (Complaint, ¶ 47; E. Simon Affidavit, ¶ 13.) At the time, the Simons were unaware that the Foleys started this company. (Complaint, ¶ 48.) According to the Complaint, Edward and Randy Simon now believe that the Foleys formed TRI-X to fraudulently deplete CSI's assets and sever its business relationship with Edward Graphics in light of the pending sale to Jacobs and Thompson. (Complaint, ¶¶ 46, 48.)

As an example of the fraudulent acts the Simons attribute to the Foleys, they cite an April 10, 2006 invoice from TRI-X to CSI in the amount of $125,000 for "Advertising, Marketing, Sales training fee for fiscal 2005" (appended to the Complaint as Exhibit G). (Complaint, ¶ 50; E. Simon Affidavit, ¶ 14.) The Simons maintain that this is a false and

fraudulent invoice, and that TRI-X, which employed only the Foleys, never performed any work for CSI. (Complaint, ¶ 51; E. Simon Affidavit, ¶ 12.) They further allege that the Foleys fraudulently issued a check from CSI to TRI-X for $30,000 as partial payment on this invoice. (Complaint, ¶ 52; E. Simon Affidavit, ¶ 15.) In short, the Simons allege that the Foleys used TRI-X to fraudulently funnel money and assets out of CSI and into their own hands. (E. Simon Affidavit, ¶ 12.)

The Simons allegedly learned of this transaction while performing a routine check of CSI's accounts. (Complaint, ¶ 53.) Upon this discovery, the Simons immediately notified the Foleys and CSI's Florida bank that they disputed this invoice and opposed money being drawn on the CSI corporate account under the auspices of making partial payment on the invoice. (Complaint, ¶ 53.) Moreover, fearing that they were being defrauded, the Simons contacted CSI's customers and requested that they send their payments directly to Edward Graphics, instead of to CSI. (Complaint, ¶ 55.) They also tried to use the blank, pre-signed checks that Laura Foley had provided. (Complaint, ¶ 55.)

In response, the Foleys sent notices to CSI's customers in April of 2006 warning them of a "Fraud Alert," and advising that requests to change the address to which they should make payments to CSI was a "fraud scam." (Complaint, ¶ 58.) The Foleys also stopped payment on the blank checks in the Simons' possession and changed the passwords on CSI's accounts to eliminate the Simons' access. (Complaint, ¶ 60; E. Simon Affidavit, ¶ 16.) Edward and Randy Simon also aver that the Foleys have since transferred all of CSI's assets, including goodwill, customer lists, supplier lists, etc., to TRI-X. (Complaint, ¶¶ 63, 75; E. Simon Affidavit, ¶ 22.) And despite continued demands for

payment, the Foleys refuse to pay the $279,619 CAD due to Jacobs and Thompson as the new owners of Edward Graphics. (Complaint, ¶ 64; E. Simon Affidavit, ¶ 11.)

The Simons maintain that at the time they were "shut out" of CSI (in April of 2006), CSI had accounts receivables valued at $300,617 USD. (Complaint, ¶ 67.) It also had $62,464 USD in its Florida operating account (even after the payment of the $30,000 to TRI-X). (Complaint, ¶ 68; E. Simon Affidavit, ¶ 17.) Moreover, it had $52,161 USD worth of printing-blade inventory stored in a warehouse in Buffalo, NY. (Complaint, ¶¶ 5, 69, 71.) Nonetheless, as of the filing of the Complaint, Defendants have not made any payments on the $279,619 CAD debt owed to Edward Graphics. (Complaint, ¶ 74.)

### III. DISCUSSION

**A.    Plaintiffs' Motion for an *Ex Parte* Temporary Restraining Order**

**1.    Legal Standards**

Injunction relief "is an extraordinary and drastic remedy which should not be routinely granted." Med. Soc'y of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977); see also Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, 934 F.2d 30, 33 (2d Cir. 1991). "The legal standards for granting a temporary restraining order and a preliminary injunction are the same." Young-Flynn v. Wright, No. 05 Civ. 1488, 2007 WL 241332, at *7 (S.D.N.Y. Jan. 26, 2007) (quoting Gund, Inc. v. SKM Enters., Inc., No. 01 Civ. 0882, 2001 WL 125366, at *1 (S.D.N.Y. Feb. 14, 2001)). The movant must demonstrate

> (1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.

N.A.A.C.P., Inc. v. Town of East Haven, 70 F.3d 219, 223 (2d Cir. 1995) (quoting Resolution Trust Corp. v. Elman, 949 F.2d 624, 626 (2d Cir. 1991)); see also SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc., 211 F.3d 21, 24 (2d Cir. 2000).

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir. 1983)(citations omitted); see also Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981) (the threat of irreparable harm is the *sine qua non* for the granting of injunctive relief). The claimed irreparable harm must be "actual and imminent," not "remote [or] speculative," or merely a possibility. Forest City Daly Hous., Inc. v. Town of N. Hempstead, 175 F.3d 144, 153 (2d Cir. 1999); see also Borey, 934 F.2d at 34.

Moreover, irreparable harm is "incapable of being fully remedied by monetary damages." Reuters Ltd. v. United Press, Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990). Injunctive relief is therefore generally not appropriate where the potential harm is strictly financial and can be compensated by money damages. See N.A.A.C.P., 70 F.3d at 224; Sperry Int'l Trade, Inc. v. Gov't of Israel, 670 F.2d 8, 12 (2d Cir. 1982). An exception exists, however, and injunctive relief may be appropriate where the harm is financial if the movant demonstrates that the monetary loss cannot be rectified by financial compensation. See Borey, 934 F.2d at 34 (citing Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)).

Determining likelihood of success on the merits often requires courts to judge the merits of the case at a very preliminary stage of the litigation. Because of this preliminary posture, when coupled with a demonstration of irreparable harm, the movant need only establish that success on the merits is more probable than not. As the Second Circuit has stated:

> A movant seeking to avail himself of the first alternative [likelihood of success on the merits] need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt.

Eng v. Smith, 849 F.2d 80, 82 (2d Cir. 1988) (quoting Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985)); see also Connor v. New York State Comm'n on Judicial Conduct, 260 F.Supp.2d 517, 520 (N.D.N.Y. 2003); Tremper v. Ulster County Dep't of Prob., 160 F.Supp.2d 352, 356 (N.D.N.Y. 2001); Varsames v. Palazzolo, 96 F.Supp.2d 361, 366 (S.D.N.Y. 2000).

Finally, although no preliminary injunction can issue without notice, see Fed. R. Civ. P. 65(a)(1), a temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney if

> (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed. R. Civ. P. 65(b); see also Chapman v. Merch. Mart Props., No. 2:07-CV-61, 2007 WL 922258, at *2-*3 (D.Vt. Mar. 23, 2007); Bridges Network, Inc. v. Rafiq, No. 06-CV-31E, 2006 WL 145912, at *2 (W.D.N.Y. Jan. 19, 2006).

**2.    Analysis**

Plaintiffs allege that Defendants have fraudulently transferred and converted CSI's assets, including bank deposits, receivables, corporate opportunities, and confidential client information.  (E. Simon Affidavit, ¶ 22.)  They maintain, however, that CSI has one remaining asset — the $52,161 worth of printing blades stored in the Buffalo warehouse — that should be applied to the debt owed to Edward Graphics.  (E. Simon Affidavit, ¶ 23.) They argue that based on Defendants' past actions, an *ex parte* temporary restraining order is needed to bar Defendants from further transferring CSI's assets, particularly the inventory in Buffalo, and to prevent Defendants from destroying or hiding records that could be used as evidence in this action.  (E. Simon Affidavit, ¶ 28.)

      **a.    Plaintiffs Have Failed to Satisfy the Requirements for Issuance of an *Ex Parte* Temporary Restraining Order**

At the outset, this Court finds that Plaintiffs have failed to satisfy the requirements for issuance of a temporary restraining order on an *ex parte* basis.  First, Plaintiffs have not demonstrated that they are in danger of suffering an *immediate* injury as required by Rule 65(b).  Plaintiffs argue that Defendants' past actions, as described in the Complaint, indicate that they will destroy records and continue to fraudulently transfer CSI's assets. But the acts about which Plaintiffs primarily complain — the allegedly fraudulent $30,000 payment from CSI to TRI-X, the "Fraud Alert" issued by CSI to its customers, and the elimination of access to CSI's accounts — all occurred in April and May of 2006, nearly 17 months ago.  In fact, Plaintiffs concede that they have not had any contact with Defendants since May of 2006.  (E. Simon Affidavit, ¶ 24.)  And they state that "[t]ime has passed and things have settled down, but . . . bitterness remains and is the basis for the plaintiffs fears in this regard." (Plaintiffs' Memorandum of Law.)  Therefore, there is no basis to conclude

9

that Plaintiffs are in immediate danger of suffering an irreparable injury at the hands of Defendants.

This lack of immediacy is demonstrated by Plaintiffs' own preparation of this lawsuit. The various breaches of contract, acts of fraud, and violations of fiduciary duties alleged in the Complaint occurred in April and May of 2006. Yet the Complaint was not drafted until July 27, 2007, not verified[2] by Edward Simon until September 5, 2007, and then not filed until November 14, 2007. Plaintiffs argue that this delay is attributable to their need to resolve issues with Jacobs and Thompson, and that time was needed to prepare this action. But the very fact that Plaintiffs elected to address other issues first (and let 17 months pass) itself demonstrates the lack of an immediate threat of irreparable harm.

Second, Plaintiffs have not established cause for the imposition of injunctive relief without notice to Defendants. Plaintiffs are obviously familiar with Defendants, and they are aware that Defendants are represented by counsel, but no notice has been provided. (Falcone Affirmation, ¶ 6.) The only cause articulated by Plaintiffs' counsel for proceeding without notice is the "known actions of the Defendants" and that "knowing the Defendants as well as my clients do, that if notified, they would take further actions to destroy records or make further fraudulent transfers including a possible transfer of the inventory in Buffalo." (Falcone Affirmation, ¶¶ 5, 6.) But as discussed above, the "known actions of the Defendants" occurred nearly 17 months ago. And although Plaintiffs allege that Defendants cut-off their access to CSI's corporate records in the past, there is no evidence

---

[2]The notarization of several documents in this case, including Plaintiffs' verification of the Complaint and Edward Simon's affidavit, is deficient. The notary's signature is illegible, there is no stamp designating the length of the notary's commission, and the notary's name is not printed beneath the signature line. It appears, however, based on a comparison of signatures, that the notary used in this case is James R. Inglis, Plaintiffs' Canadian solicitor. (Complaint, Exhibit M.) Future filings in this matter must be properly notarized.

(and Plaintiffs do not allege) that Defendants have ever actually destroyed or hidden records or expressed an intention to do so. There is thus an insufficient basis to conclude that notice to Defendants would result in immediate and irreparable harm, particularly where Plaintiffs have waited 17 months to file suit.

Accordingly, for each of these reasons, Plaintiffs' Motion for an *Ex Parte* Temporary Restraining Order is denied.

### b. Plaintiffs Have Failed to Demonstrate That They Are Entitled to Injunctive Relief

Plaintiffs argue that a temporary restraining order is necessary to prevent Defendants from effectuating further fraudulent conveyances, and to protect documents in Defendants' possession that may be of evidentiary value. Without much elaboration, Plaintiffs maintain that they are being irreparably harmed by Defendants' refusal to provide them access to CSI's financial information, and would suffer further irreparable harm if CSI's assets, particularly the inventory stored in Buffalo, are fraudulently conveyed.

In this Court's view, Plaintiffs' claims of irreparable harm are entirely speculative. First, Plaintiffs have no current information regarding Defendants' conduct or intentions. Their basis for believing that Defendants will destroy evidence and fraudulently convey CSI's assets is the existence of "bitterness" between the parties. (Plaintiffs' Memorandum of Law.) But this bitterness has been present since at least April of 2006, and Plaintiffs have not demonstrated why there is now an imminent risk of irreparable injury that was not present when the allegedly fraudulent acts took place.

Second, but for the inventory stored in Buffalo, Plaintiffs maintain that Defendants have already conveyed or converted all of CSI's assets. (E. Simon Affidavit, ¶¶ 22, 23.) And there is no recent information suggesting that Defendants are making any effort to sell

or otherwise dispose of the Buffalo inventory. To the contrary, Plaintiffs concede that the warehouse manager refused to release the inventory to either party. (E. Simon Affidavit, ¶ 23.) There is therefore little risk that Defendants will have the ability to convey or convert this property. But even if Defendants were able to do so, Plaintiffs are aware of the approximate value of the inventory ($52,161 USD), making any fraudulent sale by Defendants compensable through monetary damages. See, e.g., N.A.A.C.P., 70 F.3d at 224 (injunctive relief not appropriate where alleged harm can be compensated by money damages).

Third, as discussed above, there is an insufficient basis to conclude that Defendants will destroy CSI's financial records. There is no allegation that Defendants have engaged in such actions in the past, and Plaintiffs' 17-month delay in bringing this action detracts from their present claim that there is a serious risk of spoliation of evidence.

For these reasons, this Court finds that Plaintiffs have not demonstrated that they are likely to suffer imminent, irreparable harm before a decision on the merits of this case can be rendered. See Bell & Howell, 719 F.2d at 45. All Plaintiffs have alleged is the possibility of harm, which is not enough for the drastic remedy of injunctive relief: the harm must be "actual and imminent," not "remote [or] speculative." Forest City, 175 F.3d at 153; Borey, 934 F.2d at 34. Plaintiffs' Motion for an *Ex Parte* Temporary Restraining Order is therefore denied. And because Plaintiffs have failed to establish irreparable harm, this Court need not address the likelihood of success on the merits and/or the balance of hardships.

**B.      Plaintiffs' Motion for an Order to Show Cause**

Together with their request for injunctive relief, Plaintiffs seek the issuance of an Order to Show Cause directing Defendants to appear and show cause why (1) Anthony Foley should not be removed as the trustee of the trust and new shares in CSI be issued to Edward and Randy Simon, (2) Plaintiffs should not be granted leave to conduct pre-Answer discovery in the form of expedited document production and depositions of the Foleys, (3) Defendants should not be preliminarily enjoined from destroying corporate documents and conveying corporate assets, particularly the inventory stored in Buffalo, and (4) Defendants should not be ordered to pay Plaintiffs' attorneys' fees.

Again, given the 17-month delay in this case and Plaintiffs' failure to establish that Defendants are presently engaged in any conduct that necessitates injunctive relief, this Court finds no cause at this time to direct that any further steps in this litigation be conducted on an expedited basis.  If circumstances arise after service of the Complaint that in Plaintiffs' view warrants relief on an expedited basis, they can move for the appropriate relief at that time.  For now, Plaintiffs' request for issuance of an Order to Show Cause is denied, and this case shall proceed with service of the Complaint.  Plaintiffs' request for recovery of their attorneys fees for this motion is also denied.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for a Temporary Restraining Order and Order to Show Cause is denied.

## V.  ORDER

IT HEREBY IS ORDERED, that Plaintiffs' Motion for a Temporary Restraining Order and Order to Show Cause (Docket No. 2) is DENIED.

SO ORDERED.


Dated:   November 21, 2007
           Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge
