UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EDWARD A. SIMON, RANDY E. SIMON,
and OJOCHAL HOLDINGS, INC., f/k/a
Edward Graphic Supplies, LTD,

                              Plaintiffs,

          v.                                                **DECISION AND ORDER**
                                                            07-CV-766S
ANTHONY J. FOLEY, LAURA FOLEY,
CONVERTING SOLUTIONS, INC. and
TRI-X, INC.,

                              Defendants.

## I.  INTRODUCTION

Plaintiffs Edward Simon, Randy Simon, and Ojochal Holdings, Inc., formerly known

as Edward Graphic Supplies, Ltd., bring this action against Defendants Anthony Foley,

Laura Foley, Converting Solutions, Inc., and TRI-X, Inc.  (Docket No. 1.)  Defendants have

filed a motion to dismiss and for change of venue (Docket No. 13).[1]  For the reasons

discussed below, Defendants' motion will be granted insofar as Defendants seek transfer

of venue to the United States District Court for the Middle District of Florida.  Defendants'

motion to dismiss will be denied without prejudice.

---

[1]In support of their motion, Defendants have filed a memorandum of law (Docket No. 10, re-filed at Docket No. 34), the affidavit of Laura Foley (Docket No. 15), and a reply memorandum (Docket No. 32). Plaintiffs have filed a memorandum in opposition to the motion (Docket No. 29), along with a memorandum on relevant Canadian law (Docket No. 29, Ex. 2).

## II. BACKGROUND

### A. Factual Background

#### 1. The Parties

The individual litigants in this case are all related.  Plaintiff Edward A. Simon is the father of Plaintiff Randy E. Simon and Defendant Laura Foley.  (Compl. (Docket No. 1) ¶¶ 1, 8; E. Simon Aff.  (Docket No. 3) ¶ 5.) Laura Foley is married to Defendant Anthony J. Foley.  (Compl. ¶¶ 4, 7; E. Simon Aff. ¶ 5.)

Edward and Randy Simon are citizens and residents of Ontario, Canada. (Compl. ¶ 1.)  They are the sole shareholders of Plaintiff Ojochal Holdings, Inc., formerly known as Edward Graphic Supplies, Ltd ("Edward Graphics").  (Compl. ¶ 1; E. Simon Aff. ¶ 2.) Edward Graphics is a Canadian corporation that manufactured and sold printing products. (Compl. ¶ 2.)

Anthony and Laura Foley are residents of Florida.  (Compl. ¶ 7.)  They are the sole Directors and Officers of Defendant Converting Solutions, Inc. ("CSI"), a New York corporation formed by Edward Simon, Randy Simon, and Anthony Foley.  (Compl. ¶¶ 7, 13, 16.)  Anthony Foley is the President of CSI and Laura Foley is the Secretary.  (Compl. ¶ 17; E. Simon Aff. ¶ 5.)  The Foleys are also both salaried employees of CSI.  (Compl. ¶¶ 19, 21; E. Simon Aff. ¶ 10.)

CSI was formed in July of 2004 to operate as the United States sales entity for Edward Graphics.  (Compl. ¶¶ 4, 18; E. Simon Aff. ¶ 3.) Anthony Foley is the record owner of all 100 issued shares of CSI, but he holds two-thirds of those shares in trust for Edward and Randy Simon (one-third for each) under the terms of a written trust agreement (Docket

No. 1, Ex. 2).  (Compl. ¶¶  6, 14, 15; E. Simon Aff. ¶ 4.)  As part of this suit, Edward and

Randy Simon each claim equitable and beneficial ownership of their one-third stake in CSI.

(Compl. ¶ 6.)

Lastly, Laura Foley is also the sole shareholder of Defendant TRI-X, Inc., a Florida

corporation that does business throughout the United States. (Compl. ¶¶ 9, 47.) Anthony

Foley is an officer and employee of TRI-X.  (Compl. ¶ 10.)

### 2.  The Business Relationship Between Edward Graphics and CSI

CSI was Edward Graphics' sales agent in the United States. (Compl. ¶¶ 4, 18;

E. Simon Aff. ¶ 3.)  The relationship was governed by a Management Services Agreement

entered into on September 7, 2004 (Docket No. 1, Ex. 3). (Compl. ¶ 22.)  When CSI sold

a product in the United States, it notified Edward Graphics of the sale.  (Compl. ¶ 23.)

Edward Graphics would then locate, sort, package, and ship the order directly to CSI's

customer.  (Compl. ¶ 23; E. Simon Aff. ¶ 6.)  Edward Graphics would also invoice the

order, directing the customer to remit payment to CSI.  (Compl. ¶ 23; E. Simon Aff. ¶¶ 6,

7.)

CSI received all customer payments and deposited the funds into its Florida bank

account.  (Compl. ¶ 23; E. Simon Aff. ¶ 7.)   It then paid Edward Graphics for the products

shipped, the shipping costs, and any additional costs associated with the order through an

"inter-company account."  (Compl. ¶¶ 25, 26; E. Simon Aff. ¶ 8.)  It appears that Edward

Graphics did not have its own source of funding.  (Compl. ¶ 55; E. Simon Aff. ¶ 9.)  Rather,

it monitored CSI's financial and sales accounts via Internet access, and was dependent

on blank checks pre-signed by Laura Foley and drawn on CSI's Florida bank account to

pay its operating expenses.  (Compl. ¶¶ 23, 55; E. Simon Aff. ¶ 9.)

3

The two companies successfully carried on in this manner until sometime in 2005. (Compl. ¶ 47.)  At that time, the Simons were negotiating the sale of Edward Graphics so that Edward Simon could retire.  (Compl. ¶ 37.)  The Simons were also attempting to sell their interests in CSI to the Foleys, but they could not reach an agreement. (Compl. ¶ 38.)

On May 2, 2006, the Simons sold Edward Graphics to Jacobs and Thompson, Inc. (Compl. ¶ 39.)  Included in the sale was an accounts receivable due to Edwards Graphics from CSI for $279,619 CAD.  (Compl. ¶ 39.)  It was expected that CSI would pay this receivable to Jacobs and Thompson after it collected various outstanding invoices from its customers.  (Compl. ¶ 45.)  The sale agreement also included a consultant position for Randy Simon, and the continued use of CSI as Edward Graphics' United States sales arm. (Compl. ¶¶ 40, 44.)

### 3.  TRI-X, Inc.

Meanwhile, on November 7, 2005, Anthony and Laura Foley formed TRI-X.  (Compl. ¶ 47; E. Simon Aff. ¶ 13.)  At the time, the Simons were unaware that the Foleys started this company. (Compl. ¶ 48.)  According to the Complaint, Edward and Randy Simon now believe that the Foleys formed TRI-X to fraudulently deplete CSI's assets and sever its business relationship with Edward Graphics in light of the pending sale to Jacobs and Thompson.  (Compl. ¶¶ 46, 48.)

As an example of the fraudulent acts the Simons attribute to the Foleys, they cite an April 10, 2006, invoice from TRI-X to CSI in the amount of $125,000 for "Advertising, Marketing, Sales training fee for fiscal 2005" (appended to the Complaint as Exhibit G). (Compl. ¶ 50; E. Simon Aff. ¶ 14.)  The Simons maintain that this is a false and fraudulent invoice, and that TRI-X, which employed only the Foleys, never performed any work for

4

CSI.  (Compl. ¶ 51; E. Simon Aff. ¶ 12.)  They further allege that the Foleys fraudulently issued a check from CSI to TRI-X for $30,000 as partial payment on this invoice.  (Compl. ¶ 52; E. Simon Aff. ¶ 15.)  In short, the Simons allege that the Foleys used TRI-X to fraudulently funnel money and assets out of CSI and into their own hands.  (E. Simon Aff. ¶ 12.)

The Simons allegedly learned of this transaction while performing a routine check of CSI's accounts.  (Compl. ¶ 53.)  Upon this discovery, the Simons immediately notified the Foleys and CSI's Florida bank that they disputed this invoice and opposed money being drawn on the CSI corporate account under the auspices of making partial payment on the invoice.  (Compl. ¶ 53.)  Moreover, fearing that they were being defrauded, the Simons contacted CSI's customers and requested that they send their payments directly to Edward Graphics, instead of to CSI. (Compl. ¶ 55.)  They also tried to use the blank, pre-signed checks that Laura Foley had provided.  (Compl. ¶ 55.)  In response, the Foleys sent notices to CSI's customers in April of 2006 warning them of a "Fraud Alert," and advising that requests to change the address to which they should make payments to CSI was a "fraud scam." (Compl. ¶ 58.)  The Foleys also stopped payment on the blank checks in the Simons' possession and changed the passwords on CSI's accounts to eliminate the Simons' access.  (Compl. ¶ 60; E. Simon Aff. ¶ 16.)  Edward and Randy Simon also aver that the Foleys have since transferred all of CSI's assets, including goodwill, customer lists, supplier lists, etc., to TRI-X.  (Compl. ¶¶ 63, 75; E. Simon Aff. ¶ 22.)  And despite continued demands for payment, the Foleys refuse to pay the $279,619 CAD due to Jacobs and Thompson as the new owners of Edward Graphics.  (Compl., ¶ 64; E. Simon Aff., ¶ 11.)

5

The Simons maintain that at the time they were "shut out" of CSI (in April of 2006), CSI had accounts receivables valued at $300,617 USD.  (Compl. ¶ 67.)  It also had $62,464 USD in its Florida operating account (even after the payment of the $30,000 to TRI-X).  (Compl. ¶ 68; E. Simon Aff. ¶ 17.)  Moreover, it had $52,161 USD worth of printing-blade inventory stored in a warehouse in Buffalo, New York.  (Compl. ¶¶ 5, 69, 71.) Nonetheless, as of the filing of the Complaint, Defendants have not made any payments on the $279,619 CAD debt owed to Edward Graphics.  (Compl. ¶ 74.)

**B.  Procedural Background**

The Complaint in this case was filed November 14, 2007.  Simultaneously with the Complaint, Plaintiffs filed an *ex parte* motion for a temporary restraining order and an order to show cause.  (Docket No. 2.)  The motion for a temporary restraining order sought to prevent Defendants from destroying records and/or transferring or converting the assets of CSI pending hearing on the motion to show cause.  (Id.)  In turn, the request to show cause sought to remove Defendant Anthony Foley as trustee under the parties' trust agreement, to compel the issuance of CSI stock held in trust, and to expedite discovery. Plaintiffs also sought a preliminary injunction.  (Docket No. 5.)

By Decision and Order dated November 21, 2007, this Court denied Plaintiffs' motions.  (Docket No. 8.)  This Court ruled that Plaintiffs had failed to establish that they would suffer an immediate injury if *ex parte* relief were not granted, as required by Federal Rule of Civil Procedure 65(b).  (Decision and Order at 9.)  This Court also denied Plaintiffs' motion for an order to show cause.  (Decision and Order at 13.)

Subsequently, Defendants filed a motion to dismiss and for change of venue. (Docket No. 13.)  Defendants contend that the parties have contracted for certain claims

to be heard in Canada; that Plaintiffs lack standing to assert some of their claims; and that the claims against Defendants Laura Foley and TRI-X are subject to dismissal for lack of personal jurisdiction and improper venue.  Defendants seek to have any claims not dismissed or tried in Canada transferred to the United States District Court for the Middle District of Florida.  (Mem. in Support of Mot. to Dismiss (re-filed at Docket No. 34) at 14-15.)

Along with their motion, Defendants filed the affidavit of Laura Foley.  (Docket No. 15.)  Ms. Foley testified that Defendants had "unconditionally" offered the inventory in storage in Buffalo, New York to Plaintiffs, and that Plaintiffs had declined to accept the inventory because it was in poor condition.  (Foley Aff. ¶ 3.)  Ms. Foley stated that Plaintiffs are "welcome" to the disputed inventory, and "can take it any time they want."  (Foley Aff. ¶ 8.)

In response to Defendants' motion to dismiss and Ms. Foley's affidavit, Plaintiffs state that, given that the inventory in Buffalo is no longer in dispute, they "are not opposed to having the entire case transferred to the appropriate Federal District Court in Florida[.]" (Pls.' Resp. to Defs.' Mot. to Dismiss (Docket No. 28) at 3.)  Nevertheless, Plaintiffs contend that none of the claims should be heard in Canada.  Plaintiffs apparently take the position that, if some of the claims are transferred to Canada, the remaining claims should be heard in this Court and not in Florida.

### III. DISCUSSION

**A.      Motion to Dismiss Claims Arising Under the Trust Agreement for Improper Venue**

Initially, Defendant Anthony Foley moves to dismiss the claims arising under the Trust Agreement for improper venue.[2]  See Fed. R. Civ. P. 12(b)(3).  Defendant bases his argument on the following provision in the Trust Agreement:

> This Agreement shall be construed and enforced in accordance with, and the rights of the parties hereto shall be governed by, the laws of the Province of Ontario.  Each of the parties hereto irrevocably attorns to the jurisdiction of the courts of the Province of Ontario.

(Docket No. 1, Ex. 2.)  Defendant argues that, as interpreted under United States federal law, this provision requires mandatory venue in Canada and precludes this Court, or any other U.S. court, from hearing claims arising under the Trust Agreement.

Plaintiffs counter that the choice of forum clause is permissive, not mandatory, and that, as interpreted under Ontario law, venue over the trust claims is proper in the United States.

### 1.  Law Governing Enforceability of Choice of Forum Clause

Given that the Trust Agreement contains a choice of *law* clause providing that the agreement is to be construed under Ontario law, the initial question is whether U.S. or Ontario law should govern the interpretation and enforceability of the agreement's choice of *forum* clause.  The Court of Appeals for the Second Circuit recently addressed a similar question in Phillips v. Audio Active Limited, 494 F.3d 378 (2d Cir. 2007).

---

[2]Plaintiffs clarify in their response to the motion to dismiss that the claims under the Trust Agreement are against Defendant Anthony Foley only.  (Pls.' Resp. to Mot. to Dismiss (Docket No. 28) at 6.)

In Phillips, a contract contained both a choice of law clause providing that the contract was to be interpreted under English law, and a choice of forum clause stating that "any legal proceedings that may arise out of [the contract] are to be brought in England." Id. at 382.

The Philips court noted that in federal cases, choice of forum clauses are interpreted under U.S. federal law using a four-part inquiry. Id. at 383 (citing D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006)). First, the court must determine whether the clause was "reasonably communicated to the party resisting enforcement." Id. Second, the court must classify the clause as mandatory or permissive in nature. Id. Third, the court must discern whether "the claims and parties involved in the suit are subject to the forum selection clause." Id. If the clause was reasonably communicated, mandatory, and covers the claims and parties in question, the clause is presumptively enforceable. Id. The resisting party then bears the burden of rebutting this presumption by showing that enforcement would be unjust, or that the clause is invalid because of fraud or overreaching. Id. at 383-84 (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), overruled on other grounds by Lauro Lines v. Chasser, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989)).

The court asked: "In analyzing a forum selection clause, what effect should we give to a choice of law provision contained in the same contract?" Id. at 384. The court concluded that, even in the presence of a choice of law clause, the fourth part of the analysis – i.e., whether a presumptively valid choice of forum clause is enforceable – should be governed by federal law. Id. at 384-85. "This is because enforcement of forum clauses is an essentially procedural issue . . . while choice of law provisions generally

9

implicate only the substantive law of the selected jurisdiction." Id. (citing cases).

The court went on:

> We find less to recommend the invocation of federal common law to interpret the meaning and scope of a forum clause, as required by parts two and three of our analysis.

Id. at 385.  The court cited with approval a Tenth Circuit decision holding that "under federal law the courts should ordinarily honor an international commercial agreement's forum-selection provision *as construed under the law specified in the agreement's choice of law provision*[.]"  Id. (quoting Yavuz v. 61 MM, Ltd., 465 F.3d 418, 428-30 (10th Cir. 2006)) (emphasis in original).

However, the Phillips court noted that despite the choice of law clause in the contract, neither of the parties in that case had argued for application of English law to determine the enforceability of the choice of forum clause.  Id. at 386.  Given the lack of a dispute on the governing law, the Phillips court applied federal law on the enforceability issue.  Id.  The court held that, under federal law, the choice of forum clause was enforceable and required venue to be in England on the breach of contract claim.  Id. at 393; see also Cfirstclass Corp. v. Silverjet PLC, 560 F.Supp.2d 324, 328 n.2 (S.D.N.Y. 2008) (applying federal contract law principles to interpret a forum selection clause because neither party invoked the contract's choice of law clause in arguing the enforceability issue).

In Evergreen Nat'l Indem. Co. v. Capstone Bldg. Corp., 2008 WL 349457 (D. Conn. Feb. 6, 2008), the United States District Court for the District of Connecticut was squarely confronted with the same question identified but not decided in Phillips.  There, the parties' contract contained a choice of law clause providing for the application of the law of the

forum in which the work was performed (Connecticut), along with a choice of forum clause stating that "any action or proceeding shall be heard and determined in the Circuit Court of Jefferson County, Alabama." Id., at *1. In evaluating which law governed the enforceability of the choice of forum clause, the court read Phillips to require that the choice of law clause be honored with respect to the interpretation and scope of the choice of forum clause. Id., at *2. Applying Connecticut law, the court found that the forum selection clause was not mandatory and did not require dismissal for improper venue. Id., at *4.

Here, the Trust Agreement contains a choice of law clause providing for the application of Ontario law, and Plaintiffs advocate for Ontario law to govern the interpretation of the forum selection clause. As such, under the principles stated in Phillips, this Court will apply Ontario law to the question of the meaning and scope of the clause. However, this Court must apply federal law to determine the ultimate question of whether the forum selection clause is enforceable in this case. Phillips, 494 F.3d at 384-85.

## 2.  Interpretation of the Forum Selection Clause

The first inquiry is whether, under Ontario law, the choice of forum clause in the Trust Agreement is mandatory or permissive.[3] As noted, the clause provides that "[e]ach of the parties hereto irrevocably attorns to the jurisdiction of the courts of the Province of Ontario."

Ontario courts hold that, for a choice of forum clause to be deemed mandatory, it must contain clear and express language of exclusivity. Khalij Comm'l Bank Ltd. v.

---

[3]Plaintiffs do not contend that the choice of forum clause is invalid on the ground that it was not reasonably communicated to them. Phillips, 494 F.3d at 383; Evergreen, 2008 WL 349457, at *2 n.2.

11

Woods (1985) 50 O.R. 2d 446, 449, 1985 Ont. Rep. LEXIS 136, *6 (Ont. H.C. Mar. 29, 1985).  In Hayes v. Peer 1 Network Inc., (2007) 86 O.R. 3d 475, 2007 Ont. Rep. LEXIS 138 (Ont. Sup. Ct. J. June 25, 2007), the court considered a choice of forum clause materially identical to the one in this case.  The plaintiff was an Ontario resident who was employed by the defendant pursuant to the terms of an employment contract. After he was terminated, the plaintiff sued the defendant in Ontario.  2007 Ont. Rep. LEXIS 138, at *4.

The employment contract provided that "each party irrevocably attorns to the jurisdiction of the court system of the State of Washington."  Id., at *4.  A Master at the lower court level determined that this clause was *non-exclusive* and did not require jurisdiction to be in the Washington courts.  Id., at **4-5.  However, the Master determined that the forum selection clause should be given deference and that the plaintiff bore the burden of establishing why venue should not be transferred to the parties' chosen forum of Washington.  Id.

The higher court reversed the Master's decision.  Id., at *9.  Importantly, the higher court did not dispute the Master's finding that the forum selection clause in that case was *not* mandatory. Id., at 7.  Instead, the court faulted the Master's conclusion that the plaintiff bore the burden of showing that the non-exclusive clause should not be enforced.  Id.  The court held that "the traditional onus remains on a moving party to show that there is clearly a more appropriate forum than Ontario which has jurisdiction as of right because of its presence-based jurisdiction." Id., at 8.  Cf. also Sugar v. Megawheels Tech. Inc. [2006] O.J. No. 4493, 2006 On.C. LEXIS 4420, *16 (Ont. Sup. Ct. J. Nov. 9, 2006) (characterizing as non-mandatory a forum selection clause providing that the purchaser "irrevocably attorns to the non-exclusive jurisdiction of the courts of the Province of Alberta"); Multiactive

Software Inc. v. Advanced Svc. Solutions [2003] B.C.J. No. 945, 2003 BC.C. LEXIS 2600, **2, 12 (B.C. Sup. Ct. Apr. 25, 2003) (characterizing as non-exclusive a clause providing that "[t]he parties irrevocably attorn to the jurisdiction of the courts of British Columbia, Canada").

From this authority, this Court concludes that the forum selection clause in this case, which is nearly identical to the one in Hayes, is not mandatory.  Although the clause indisputably *allows* the Ontario courts to exercise jurisdiction over claims arising from the Trust Agreement, it does not bind the parties to the exclusive, mandatory jurisdiction of the Ontario courts.

### 3.  Enforceability of the Forum Selection Clause

Given that the forum selection clause in the Trust Agreement is not mandatory, under the principles outlined in Phillips, it is improper to dismiss this case for improper venue based on the clause's existence.  Phillips, 494 F.3d at 383; John Boutari & Son, Wines and Spirits, S.A. v. Attiki Imp. and Distrib., Inc., 22 F.3d 51, 52-53 (2d Cir. 1994) (reversing district court's dismissal for improper venue based on a permissive forum selection clause; "The choice of forum must be mandatory rather than permissive.").   As such, this Court will deny Defendant's motion to dismiss the claims under the Trust Agreement on that basis.

### B.  Transfer to the Middle District of Florida is Proper

As noted, despite their dispute regarding the proper venue for the claims arising under the trust, the parties apparently otherwise agree to a transfer of this case to the United States District Court for the Middle District of Florida.  (Pls.' Resp. to Mot. to Dismiss at 3.)  Accordingly, this Court will analyze whether venue would be proper in that district

13

and whether transfer is warranted under 28 U.S.C. § 1404.

The venue provision states in relevant part:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).[4]   The parties appear to agree that a substantial part of the events leading to this litigation occurred in the Middle District of Florida, where Defendants Anthony and Laura Foley lived and operated Defendant corporation CSI, and where Defendant TRI-X was incorporated and operated.   (See, e.g., Mem. in Support of Mot. to Dismiss at 10-11; Compl. ¶¶ 7, 9, 16, 17, 23-26, 34, 47.)   Venue therefore would be proper in that district.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought."   "The goal of section 1404(a) is to prevent waste of time, energy and money and to protect litigants, witnesses and . . . the public against unnecessary inconvenience and expense."   Indymac Mortg. Holdings, Inc. v. Reyad, 167 F.Supp.2d 222, 239 (D.Conn. 2001) (citing cases).   In determining whether transfer is appropriate, a court should consider several factors, including (1) the convenience of the

---

[4]Jurisdiction in this case is based on diversity of citizenship.  (Compl. ¶ 11.)

14

witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.  Chiste v. Hotels.com L.P., 756 F.Supp.2d 382, 400 (S.D.N.Y. 2010) (citing POSVEN, C.A. v. Liberty Mut. Ins. Co., 303 F.Supp.2d 391, 404 (S.D.N.Y. 2004)).

Because the parties here agree that transfer of this case to the Middle District of Florida would be convenient and just, this Court is inclined at the outset to grant the motion to transfer.  Moreover, consideration of the factors identified above weighs in favor of transfer to that district.  Many of the witnesses, documents, and other sources of proof in this case are located in Florida, because that is where Defendants Anthony and Laura Foley reside and operate Defendant corporations CSI and TRI-X.  (Compl. ¶¶ 7, 9.)  By contrast, little of the proof is located in New York, and few (or no) witnesses reside in this District.  (See Mem. in Support of Mot. to Dismiss at 12.)  The relevant evidence in this District is particularly scant now that the parties apparently have resolved their dispute about the inventory stored in Buffalo.  Similarly, the locus of operative facts appears to be the Middle District of Florida, along with Canada.  (See, e.g., Compl. ¶¶ 23-26, 46-56.) Little relevant conduct took place in this District.

Additionally, the fact that the parties agree to transferring the case to Florida indicates that Florida is a convenient forum for both sides, and the fact that many of the witnesses are located in Florida suggests a Florida court would be able to compel their

attendance.  Further, although Plaintiffs originally chose this District as the forum for this case, Plaintiffs made that choice because of the disputed inventory in Buffalo.  Now that the inventory is no longer at issue, Plaintiffs are willing to litigate in another forum.

Defendants point out that a comparison of the means of the parties bears in favor of transfer to Florida, because both the individual and the corporate Defendants have limited means.  (Mem. in Support of Mot. to Dismiss at 13.)  Plaintiffs have not disputed Defendants' contention, and Plaintiffs' agreement to transfer the case to Florida suggests that litigation there would not be unduly burdensome for them.

It is true that a Florida district court likely would have little familiarity with the law of Ontario, Canada, which appears to govern the claims arising under the Trust Agreement and Management Services Agreement.  However, this is true of any U.S. district court that might consider these claims.  As such, this factor is neutral.

In sum, the majority of the factors discussed above, and the overall interests of justice, militate strongly in favor of transfer to the Middle District of Florida.  Accordingly, this Court will grant Defendants' motion to transfer.

## C.  Motion to Dismiss for Lack of Standing

Defendants seek dismissal of several of the claims against them on the ground that Plaintiffs lack standing to assert them.  In light of the transfer of this case to the Middle District of Florida based on that forum's overall convenience, this Court concludes it would be more efficient for that District to hear the parties' arguments on the merits.  Accordingly, Defendants' motion to dismiss will be denied without prejudice.  See Hernandez v. Graebel Van Lines, 761 F.Supp. 983, 992 (E.D.N.Y. 1991) (transferring venue to another court; denying without prejudice motions to strike certain affirmative defenses and to dismiss for

16

lack of personal jurisdiction).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion will be granted insofar as it seeks transfer of this case to the United States District Court for the Middle District of Florida. Defendants' motion otherwise will be denied without prejudice to reassertion in the transferee court.

## V. ORDERS

IT IS HEREBY ORDERED, that Defendants' Motion to Dismiss and for Change of Venue (Docket No. 13) is GRANTED insofar as it seeks transfer of this case to the United States District Court for the Middle District of Florida.

FURTHER, that Defendants' motion is otherwise DENIED without prejudice.

FURTHER, that the Clerk of the Court is directed to transfer Case No. 1:07-CV-766S to the United States District Court for the Middle District of Florida.

SO ORDERED.

Dated:      October 16, 2011
            Buffalo, New York

                              /s/William M. Skretny
                              WILLIAM M. SKRETNY
                                   Chief Judge
                              United States District Court